IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Raymond P. Moore

Civil Action No. 20-cv-01028-RM-NRN

AUDRA PORTER,

    Plaintiff,

v.

1st CHOICE AFTER SCHOOL KARE,

    Defendant.

## ORDER

This matter is before the Court on Plaintiff's motion for default judgment (ECF No. 16). After Defendant was served with the complaint and failed to respond, Plaintiff moved for entry of default, and the Clerk of Court entered default on May 29, 2020 (ECF No. 13). In her current motion, Plaintiff requests entry of default judgment under Fed. R. Civ. P. 55(b)(2). For the reasons given below, the motion is granted.

**I.    LEGAL STANDARD**

"[E]ven after entry of default the Court must decide whether the unchallenged facts create a legitimate basis for entry of judgment." *Villanueva v. Account Discovery Sys., LLC*, 77 F. Supp. 3d 1058, 1066 (D. Colo. 2015) (quotation omitted). Although the Court has discretion to enter default judgment, strong policies favor resolution of disputes on their merits; therefore, it is generally appropriate "only when the adversary process has been halted because of an essentially unresponsive party." *Id.* at 1067 (quotation omitted); *Tripodi v. Welch*, 810 F.3d 761, 764 (10th Cir. 2016) (default judgment committed to court's sound discretion).

Before the Court may grant a motion for default judgment, it must follow a two-step process. First, the Court has an affirmative duty to ensure its jurisdiction over both the subject matter of the action and the parties. *Williams v. Life Sav. & Loan*, 802 F.2d 1200, 1203 (10th Cir. 1986); *Marcus Food Co. v. DiPanfilo*, 671 F.3d 1159, 1166 (10th Cir. 2011) (default judgment against defendant over whom court has no personal jurisdiction is void). Second, the Court should consider whether the well-pled allegations of fact—which are admitted by a defendant upon default— support a judgment on the claims against the defaulting defendant. *See Tripodi*, 810 F.3d at 764 (by his default, defendant relieved plaintiff from having to prove complaint's factual allegations; the judgment, however, must be supported by sufficient basis in the pleadings). The Court also accepts as true the undisputed facts alleged in affidavits and exhibits. *See Brill Gloria v. Sunlawn, Inc.*, No. 08-CV-00211-MSK-MEH, 2009 WL 416467, at *2 (D. Colo. Feb. 18, 2009).

## II.     BACKGROUND

According to the complaint, Defendant is an after-school program for which Plaintiff served as the executive director from September 2016 to May 2017. The complaint alleges that Defendant's president, Bill Black ("Mr. Black"), harassed and discriminated against Plaintiff based on her sex in violation of the Colorado Anti-Discrimination Act, C.R.S. § 24-34-402(1)(a), *et seq.*, the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101, *et seq.*, and Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. §§ 2000(e) *et seq.*. Based on Defendant's conduct, Plaintiff seeks damages totaling $229,505.69.

## III.    ANALYSIS

### A.    Jurisdiction

The Court first finds that the jurisdictional prerequisites for granting default judgment are

satisfied in this case. The Court has subject matter jurisdiction over civil actions arising under federal statute. 28 U.S.C. § 1331. In addition, the Court has personal jurisdiction over Defendant because it is located and regularly transacts business in Colorado. *Dennis Garberg & Assocs., Inc. v. Pack-Tech Int'l Corp.*, 115 F.3d 767, 773 (10th Cir. 1997) ("[T]he plaintiff need only make a *prima facie* showing [of personal jurisdiction] if the motion [for default judgment] is decided only on the basis of the parties' affidavits and other written materials.").

B.  **Title VII**

The Court finds that the well-pleaded allegations in the complaint constitute a legitimate basis for entry of a judgment. Title VII provides that "[i]t shall be an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2.

Title VII is violated when "the workplace is permeated with discriminatory intimidation, ridicule, and insult . . . that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (citation and quotation omitted). The "plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination." *E.E.O.C. v. Gaddis*, 733 F.2d 1373, 1378 (10th Cir. 1984) (citation omitted).

To establish a hostile work environment claim, a plaintiff must prove: "(1) she is a member of a protected group; (2) she was subject to unwelcome harassment; (3) the harassment was based on sex; and (4) due to the harassment's severity or pervasiveness, the harassment altered a term, condition, or privilege of the plaintiff's employment and created an abusive working environment." *Harsco Corp. v. Renner*, 475 F.3d 1179, 1186 (10th Cir. 2007)

(quotation marks, brackets, and citation omitted).

In establishing a case for retaliation under Title VII, a plaintiff must demonstrate that "(1) she engaged in protected opposition to discrimination; (2) she suffered an adverse action that a reasonable employee would have found material; and (3) there is a causal nexus between her opposition and the employer's adverse action." *Williams v. W.D. Sports, N.M., Inc.*, 497 F.3d 1079, 1086 (10th Cir. 2007).

It is clear from the complaint that Plaintiff is female, placing her in a protected group. The discriminatory behavior outlined in the complaint concerns Plaintiff and another female and an openly transgender employee. In her supervisory role for Defendant, Plaintiff was asked to re-interview the transgender employee after she transitioned from male to female. Mr. Black instructed Plaintiff to tell the employee that Defendant would not hire more females. Plaintiff refused to comply with this directive because she felt it was discriminatory. In addition, Mr. Black made inappropriate comments regarding this employee to Plaintiff, stating that transvestites were not welcome, and that this employee needed to "pull up her big girl panties and grow up." (ECF No. 1 ¶ 23.) Plaintiff reported Mr. Black's conduct to human resources.

The complaint next alleges that Plaintiff was subjected to inappropriate touching when Mr. Black hugged her and slid his hands down her back and grabbed her buttocks. Other female employees were victims of similar harassment and Mr. Black even "smacked the transgender employee on the rear end." (*Id.* ¶ 31.) Additionally, Plaintiff and another female employee were exposed to pornographic material while training a male employee, and when this was brought to Defendant, it refused to take any action.

The complaint further alleges that after making a charge against Defendant with the Equal Employment Opportunity Commission ("EEOC"), Mr. Black began threatening Plaintiff

and plotted to terminate her employment.

The complaint finally alleges that Plaintiff was diagnosed with anxiety and a stable heart angina in April 2017. Plaintiff subsequently requested workplace accommodations for her disability, which Defendant denied. Mr. Black then proceeded to verbally threaten Plaintiff and her family, stating that he was going "to come at her with a double barrel shotgun." (*Id.* ¶ 40.) This culminated in Defendant terminating Plaintiff. These allegations are supported by affidavits and exhibits attached to the complaint.

Construing the facts alleged in the complaint as true, Defendant violated Title VII. In establishing a hostile work environment claim, Plaintiff shows (1) she is female; (2) she was subjected to verbal and physical harassment; (3) that this harassment was based upon her sex; and (4) that this constant harassment caused Plaintiff to feel unsafe, unwelcome, and to be in constant fear of losing her job or physical harm.

Likewise, in establishing a retaliation claim, Plaintiff shows that (1) she reported discrimination she experienced and witnessed; (2) Defendant threatened to terminate her and eventually terminated her for her opposition; and (3) as a direct result of Defendant's actions, Plaintiff suffered economic and emotional harm.

Having found the well-pleaded facts support a judgment on the claims against Defendant, the only remaining issue for the Court to address is damages to which Plaintiff is entitled for Defendant's violations.

**C.     Damages**

The purpose of Title VII is "to make persons whole for injuries suffered on account of unlawful employment discrimination." *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 418 (1975). Thus, a prevailing plaintiff is allowed "equitable relief as the court deems appropriate."

42 U.S.C. § 2000e-5(g)(1).  This relief may include back pay for two years from the filing of EEOC charges.  *Id.*  The amount of back pay is reduced by "[i]nterim earnings or amounts earnable with reasonable diligence by the person . . . discriminated against."  *Id.*  Beyond equitable relief, a plaintiff may seek compensatory and punitive damages where a defendant intentionally discriminates in employment based on the employee's sex or disability.  42 U.S.C. § 1981a.  The amount of compensatory and punitive damages is capped established by the number of workers the defendant employs.  *Id.*  Finally, a prevailing party is entitled to recover reasonable attorney fees under Title VII.  42 U.S.C. § 2000e-5(k).

    Here, Plaintiff seeks back pay for two years, future pay for three years, out-of-pocket expenses, and compensatory and punitive damages, totaling $229,505.69.  Plaintiff also seeks attorney fees, costs, and pre-judgment interest to be determined at a future date and proposes to file a separate motion for those fees following the Court's entry of default.[1]

    First, Plaintiff seeks back pay in the amount of $89,055.96.  As a starting point, Plaintiff's base salary was $5,000 a month while working for Defendant.  Plaintiff also claims she received an additional $3,000 annually for leading camps outside the school year, making her total yearly salary $63,000, or $5,250 per month.  On May 5, 2017, Plaintiff was terminated, but claims to have not received compensation after April 23, 2017.  On August 24, 2017, Plaintiff found a new position (with an unnamed employer), earning a yearly salary of $36,400.  From her last paycheck with Defendant until she was hired in her new position, plaintiff was unemployed for four months.  Since she would have earned $5,000 a month from Defendant during this time

---

[1] Plaintiff provides no authority under which the relief of pre-judgment interest ought to be granted.  In fact, Plaintiff's motion is void of any discussion pertaining to pre-judgment interest and contains only a bare request for that relief.  As the movant, Plaintiff bears the burden to demonstrate a basis on which the damages sought should be awarded; she has failed to do so with respect to pre-judgment interest.  Thus, Plaintiff's request is denied.  Along this line, Plaintiff has not requested post-judgment interest on a damages award and, as such, has forfeited her claim to that relief.

period (she was not scheduled for any extra-curricular pay), her corresponding damages are $20,000.

Next comes the difference between Plaintiff's compensation from Defendant and actual income earned in her new position, which is $2,216.67 ($5,250 minus $3,033.33). Plaintiff was employed in her new position until the end of 2018. For this sixteen-month period, Plaintiff's damages are $2,216.67 times sixteen, or $35,466.72. Beginning in 2019, Plaintiff began working for CEEN Head Start, earning $29,409.67 annually. The difference between actual and potential compensation during 2019 is $33,590.33. Thus, Plaintiff's total back pay award is $89,057.05.[2]

Plaintiff also seeks to recoup out-of-pocket costs incurred during her employment for Defendant. Plaintiff alleges she was forced to use her personal cell phone for work. Plaintiff estimates her monthly cell phone bill to be $70. Consequently, during the nine months she worked for Defendant, she sustained damages of $630. Plaintiff also seeks damages for emotional distress caused by Defendant. To cope with Defendant's discriminatory conduct, Plaintiff attended nine (9) counseling and psychiatrist appointments at $50 a session. Plaintiff paid $450 for these appointments. $630 plus $450 brings total out-of-pocket damages to $1,080.

An additional equitable remedy is reinstatement or, front pay in lieu of reinstatement. *See, e.g.*, *Carter v. Sedgwick Cty., Kan.*, 929 F.2d 1501, 1505 (10th Cir. 1991). The plaintiff bears the burden to prove an amount of front pay award. *Hansel v. Pub. Serv. Co. of Colorado*, 778 F. Supp. 1126, 1135 (D. Colo. 1991). "[Q]ualification of front pay cannot be speculative" and a plaintiff must provide a reasonable basis upon which to establish an award of future earnings. *Hansel*, 778 F. Supp. at 1135. Where a plaintiff has already been made whole for the

---

[2] The Court recognizes that this back-pay damage amount differs from that which Plaintiff requests by $1.09. This discrepancy is in Plaintiff's favor and is nominally more than that which she requests. Thus, Plaintiff will be awarded the amount of back pay the Court calculated.

harms suffered, front pay is not warranted. *Carter*, 929 F.2d at 1505. In circumstances where front pay is warranted, any award "must specify an ending date" and take into account the plaintiff's earning potential using reasonable efforts. *Id.*

Here, Plaintiff seeks $90,000 for three years of front pay. Even though Plaintiff neglects to provide any details about her job search after termination, it can be inferred from her employment with other companies that she took steps to mitigate her damages. Plaintiff correctly shows that she earned significantly lower wages in her two positions; however, she fails to explain whether she still works at CEEN Head Start or has made any efforts to secure more comparable employment. Moreover, Plaintiff fails to provide any evidentiary support demonstrating why the amount of $30,000 annually is sufficient to make her whole. And while Plaintiff specifies an end date for front pay, she does not specify the reasons for this three-year time period.

Due to the lack of discussion and evidentiary support in Plaintiff's motion, any award of front pay would be based on "mere guesswork." *Davoll v. Webb*, 194 F.3d 1116, 1145 (10th Cir. 1999) (reversing district court where it did not "articulate the specific bases for the end date" of front pay). Accordingly, Plaintiff's request for an award of additional damages in front pay is denied. *Griego v. Arizona Partsmaster, Inc.*, No. 20-CV-0639-WJM-MEH, 2020 WL 6873952, at *6 (D. Colo. Nov. 23, 2020) (declining to award plaintiff front pay based on her motion for default judgment because it lacked evidentiary support).

Plaintiff finally seeks compensatory and punitive damages. Under 42 U.S.C. § 1981a, a plaintiff may recover compensatory damages "for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses," by showing a defendant engaged in discriminatory practices with malice or reckless

indifference to a plaintiff's rights.  The sum of a compensatory and punitive damage award under this section is capped based on the size of the defendant employer.  Where a respondent "has more than 14 and fewer than 101 employees in each of 20 or more calendar weeks in the current or preceding calendar year," the award shall not exceed $50,000.  42 U.S.C. § 1981a(3)(A).

Here, Plaintiff asserts that she is entitled to $50,000 in compensatory and punitive damages for Defendant's intentional discrimination.  However, Plaintiff fails to provide sufficient evidence to support an award of the relief sought.  For one, she offers no evidence to establish that Defendant employs more than 14 and fewer than 101 employees for the prescribed time period.  Without this information, the Court cannot determine if Plaintiff is entitled to the compensatory and punitive damages she seeks.  *Griego,* 2020 WL 6873952, at *5 (declining to award compensatory and punitive damages on plaintiff's motion for default judgment because she did not "provide evidence of the number of employees employed by Defendant at the time of her separation").

For the reasons set forth above, Plaintiff is entitled to damages as follows:

| | |
|---|---|
| Back pay | $89,057.05 |
| Out of pocket | $1,080 |
| Front pay | 0 |
| Compensatory and punitive | 0 |
| Total: | $90,137.05 |

### IV.   CONCLUSION

Based on the forgoing, the Court GRANTS Plaintiff's motion for default judgment (ECF No. 16) and ORDERS as follows:

...

a. that the Clerk enter judgment in favor of Plaintiff and against Defendant for the sum of $90,137.05;

b. that on or before March 31, 2021, Plaintiff may file a motion for attorney fees as permitted by Fed. R. Civ. P. 54(d) and in compliance with D.C.COLO.LCivR 54.3;

c. that Plaintiff is awarded costs and shall within 14 days of the date of this Order file a bill of costs, in accordance with the procedures under Fed. R. Civ. P. 54(d)(1) and D.C.COLO.LCivR 54.1, which shall be taxed by the Clerk of the Court; and

d. that the Clerk is directed to close this case.

DATED this 3rd day of March, 2021.

BY THE COURT:

_____
RAYMOND P. MOORE
United States District Judge